WYMAN-GORDON COMPANY, Plaintiff-Appellee, *v.* LYNCH AREA FIRE PROTECTION DISTRICT, Defendant-Appellant.

Fourth District   No. 13789

Opinion filed August 8, 1977.

Lowenstein and Hubbard, of Danville (Fred L. Hubbard and Stephen H. Wilson, of counsel), for appellant.

Sebat, Swanson, Banks, Lessen & Garman, of Danville (Ralph J. Swanson, of counsel), for appellee.

Mr. JUSTICE HUNT delivered the opinion of the court:

This is an appeal from an order granting a petition by Wyman-Gordon Company, plaintiff-appellee, to disconnect its property from the Lynch Area Fire Protection District, defendant-appellant.

The Wyman-Gordon Company (hereafter Wyman-Gordon) purchased a 72-acre tract of unimproved farmland within the Lynch Area Fire Protection District (the District) about one mile east of the city of Danville. As a condition to Wyman-Gordon acquiring the real estate and constructing the plant, Danville agreed it would, at its expense, install sanitary sewer and water lines to the plant and pay the expenses to disconnect the site from the District. A large steel forging plant will be built on the site. The most flammable liquid to be used about the premises would be hydraulic fluid.

Following purchase of the real estate, the water line was installed to the plant and Wyman-Gordon filed petition to disconnect the lands from the District. After the evidence was received, the trial court granted the disconnection petition. It found that plaintiff had title to the real estate to be disconnected, defendant had no bonded indebtedness, the disconnection would not cause the remaining territory of the District to be noncontiguous, the loss of assessed valuation will not impair the ability of the District to render fully adequate fire protection services to the territory remaining in the District, and that the land sought to be disconnected will receive greater benefit of service from the city.

The steps necessary to be taken in order for a landowner to disconnect from a fire protection district are set forth in section 15 of "An Act in relation to Fire Protection Districts" (Ill. Rev. Stat. 1975, ch. 127½, par. 35).

On appeal, the District argues that the court erred in making its findings, since the remaining area would be noncontiguous.

After hearing all evidence, the trial court found that the matters alleged in the petition had been substantiated by the evidence and that the petition to disconnect should be granted. The court heard the testimony of the witnesses, both by Wyman-Gordon and the District, and had the opportunity to examine the exhibits. It is well settled that the trial judge is charged with determining the credibility of witnesses and the weight to be given their testimony. (*Fisher v. City of Aledo* (1974), 23 Ill. App. 3d 190, 318 N.E.2d 305.) The court's decision will not be disturbed unless it is against the manifest weight of the evidence. *Bumblauskas v. South Suburban Safeway Lines, Inc.* (1969), 110 Ill. App. 2d 52, 249 N.E.2d 143.

■■ The District argues that the area disconnected renders the balance of the fire protection district noncontiguous because it leaves a square hole of 72 acres in a much larger area. The statute referred to above provides that the petition filed must contain a statement that the detachment and connection will not cause the territory remaining in the district to be noncontiguous. As indicated by petitioner's exhibit 1, the area sought to be detached by petitioner is completely surrounded by the balance of the fire protection district. Every remaining portion of the fire protection district adjacent to the lands sought to be disconnected is touching. The only question therefore is whether there is any judicial interpretation that would indicate that if one puts a hole in a donut, the cake portion of the donut cannot be considered contiguous.

A comparable case was decided by this court in *Constant v. Williamsville Fire Protection District* (1959), 21 Ill. App. 2d 313, 157 N.E.2d 684 (abstract). A fire protection district was established which was largely square and covered, perhaps, several townships. Detachments therefrom were permitted which left only highly irregular pieces of land in the district, many of which were connected only by streets or roadways or very narrow strips of land. The question raised on appeal was whether or not this jagged and irregular piece of ground was still a contiguous tract under the statute. The court stated:

> "It is the opinion of this Court that 'contiguous' means connected to and adjoining, with a common boundary line. It is further the opinion of this Court that 'isolated' means to be apart and away from the other, and not connected in any way. Here there was no isolated tract or area of land, and within the plain meaning of the word 'contiguous' the remaining area of the fire protection district contained a number of irregular shaped tracts that had a common boundary all touching and connected.

> It is not the province of this Court to make laws, but only to interpret them. If the legislature had seen fit to insist upon the fire protection district to be compact and contiguous, a different situation would arise. But where the only requirement is that the land sought to be incorporated into a fire protection district be an area of 'contiguous territory', we cannot interpret the meaning of the word to mean more than its ordinary, usual and common sense meaning."

A clear reading of *Constant* indicates that contiguity is to be given its common, ordinary meaning which, in this case, is that the remaining portions of the Lynch Area Fire Protection District lands after the disconnection must touch. The "hole in the donut" leaves all of the fire protection district surrounding the hole completely touching.

The District relies upon *Village of Morgan Park v. City of Chicago* (1912), 255 Ill. 190, 99 N.E. 388, wherein our supreme court held that a city could not be organized in a way to have within its boundaries and be totally surrounding an unincorporated territory; the same result through annexation was disapproved. Therefore, appellee continues, the Morgan Park case by analogy applies to a situation where the hole comes out of an existing fire protection district. Today the Illinois Municipal Code contemplates this possibility and provides for the absorption of the surrounding unincorporated territory into one or the other of the municipalities upon request. (Ill. Rev. Stat. 1975, ch. 24, par. 7—1—12.) In addition, the statutory interpretation of "contiguous" embodied in *Morgan Park* has since been criticized. (See *People ex rel. Montgomery v. Lierman* (1953), 415 Ill. 32, 112 N.E.2d 149.) We do not consider *Morgan Park* controlling here.

■■ We do not find that there has been any violation of the statute pertaining to the disconnection of territory from fire protection districts as a result of the disconnection of this tract of land which has a "hole in the donut" effect upon the remaining portions of the fire protection district.

■■ The District presents another point on appeal. The contract entered into by Wyman-Gordon and Danville provided that, as an inducement to Wyman-Gordon bringing their plant to the vicinity of Danville, Danville would move to file a petition to disconnect the 72 acres which Wyman-Gordon sought to purchase from the Lynch Area Fire Protection District. Corporation counsel for the city of Danville is Ralph J. Swanson. The petition was filed by the law firm of Sebat, Swanson, Banks, Lessen and Garman, representing the Wyman-Gordon Company. The District charges that this constitutes champerty and maintenance in violation of State law (Ill. Rev. Stat. 1975, ch. 13, pars. 21, 22) and renders the trial court without jurisdiction. A review of the record indicates that it was never established at the trial that Ralph J. Swanson was acting in

behalf of Danville at any point in the proceeding, but rather that the firm of which he was a member was representing the Wyman-Gordon Company. The above provisions of the Illinois statute refer to a party who unlawfully stirs up lawsuits or quarrels or officiously intermeddles in any suit by maintaining or assisting any party with money with a view to promote litigation. Here, Danville and Wyman-Gordon entered into an agreement for their common benefit; Danville was not wickedly and willfully trying to stir up a suit between Wyman-Gordon and the District. The desire to disconnect was Wyman-Gordon's and not Danville's.

An essential element of a champertous contract is an agreement to divide the proceeds of litigation. A contract which contains an undertaking to defray the expenses of litigation for consideration other than proceeds of the litigation is not champerty. 7 Ill. L. & Prac. *Champerty & Maintenance* §3, at 213 (1954), and cases cited therein.

From the facts adduced at trial, this court, like the trial court, can find no evidence of a violation of the statute.

It is apparent from a consideration of all the evidence that Wyman-Gordon has met the statutory requirements to be granted its petition. The decision of the trial court is therefore affirmed.

Affirmed.

GREEN, P. J., and REARDON, J., concur.