WANDA BLACKWELL, Plaintiff-Appellant, *v.* CITY NATIONAL BANK AND TRUST COMPANY, Defendant-Appellee.

Second District   No. 79-198

Opinion filed January 4, 1980.

James L. Donohue, of Martenson, Donohue and Alexander, of Rockford, for appellant.

Williams, McCarthy, Kinley, Rudy & Picha, of Rockford, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiff sued the City National Bank and Trust Company on account of injuries she suffered when she slipped and fell on the bank floor. The jury held for the defendant and the plaintiff appeals raising the following issues: (1) whether the trial court's (a) special interrogatory and

(b) instructions on issues and burden of proof correctly stated the burden of proof regarding the duty of care owed to a business invitee by the premises' owner; (2) (a) whether the trial court erred in giving the jury defendant's tendered instruction, Illinois Pattern Jury Instruction, Civil, No. 5.01 (2d ed. 1971) (hereinafter IPI), concerning plaintiff's failure to produce a witness under her control during her case in chief and (2)(b) did the court abuse its discretion by refusing to allow the plaintiff to re-open her case to call the witness in question and (3) did the court improperly allow a witness to testify to hearsay evidence.

December 3, 1976, was a cold wet day in Rockford, with snow and slush on the streets. Around 7 p.m. on that day, the plaintiff, accompanied by her daughter and husband, entered the defendant bank for the purpose of depositing her pay check. She entered by a side door where there was a mat placed to absorb excess water, then went through a second door and down a carpeted corridor before turning left into the main lobby where the teller cages were located. The floor area in the main lobby was covered with vinyl tile and in the center was an inlaid pattern or "logo" designated as "Sir Greenback," with an advertising symbol which was the bank's familiar symbol. The evidence indicated there were rubber mats in front of the tellers' cages around the lobby. There were no mats in the center or middle portion of the lobby since, as was testified to by a bank employee, the bank did not wish to cover up "Sir Greenback." Customers traversing the lobby from the door to a teller's cage would therefore be apt to walk on the uncovered part of the lobby, at least part of the way, especially if there were already customers standing on the mats in front of the tellers' cages. Plaintiff walked on the uncovered vinyl floor near the "Sir Greenback" emblem, slipped and fell, breaking her arm. The evidence adduced at trial established that because of the nature of the weather there was a considerable amount of water being brought into the bank by customers. A maintenance man, 78 years old, was mopping up the lobby from time to time; however, he testified, he was not charged with that duty but was doing it on his own. A bank employee testified he was not sure whether Morgan, the maintenance man, had last mopped the floor 1 minute or 10 minutes before the plaintiff fell. Morgan apparently was not in the lobby when the accident occurred. As a result of the fall, the plaintiff suffered a comminuted fracture of her left arm. Her physician testified at trial, 23 months after the injury, that she had suffered some permanent loss of motion of her arm. At the conference on instructions, the defendant tendered an instruction based on section 343 of the Restatement (Second) of Torts, which the court modified and gave as the court's own instruction No. 20 as to burden of proof. This read as follows:

"The plaintiff claims that she was injured while exercising

ordinary care for her own safety and that defendant was negligent. Plaintiff claims that the defendant knew, or should have known, that the wet floor created an unreasonable risk of harm to plaintiff and plaintiff claims that the defendant should expect that plaintiff would fail to realize the danger of the wet floor or adequately protect herself. Plaintiff further claims that the defendant failed to exercise reasonable care to protect her against such danger in one or more of the following ways:

(a) Failed to prohibit plaintiff from walking on wet floor;

(b) Failed to cover an adequate amount of floor surface with rubber mats between the tellers' cages;

(c) Failed to assign sufficient number of maintenance personnel to cope with the water conditions on the floor surface;

(d) Failed to warn the plaintiff that the wet tile created an unreasonable risk of harm. * * *."

While (a) and (b) of the instruction are obviously taken from the Restatement (Second) of Torts, and the Restatement has been approved in several Illinois cases as accurately stating the duty of a landlord to an invitee injured on his premises (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552), the instruction was, of course, at variance with IPI Civil No. 21.02 designated "Burden of Proof on the Issues", which reads as follows:

"The plaintiff has the burden of proving each of the following propositions:

First, that the plaintiff before and at the time of the occurrence was using ordinary care for [his own safety] [and] [the safety of his property];

Second, that the defendant acted, or failed to act in one of the ways claimed by the plaintiff as stated to you in these instructions and that in so acting, or failing to act, the defendant was negligent;

Third, that [the plaintiff was injured] [and] [his property was damaged];

Fourth, that the negligence of the defendant was a proximate cause of [the injury to the plaintiff] [and] [the damage to his property].

If you find from your consideration of all the evidence that each of these propositions has been proved, then your verdict should be for the plaintiff, but, if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant."

■■ The plaintiff tendered an instruction on burden of proof which exactly followed the language of IPI Civil No. 21.02, but this was refused by the court. It will be noted that the crux of the legal difference between the two instructions is that Instruction No. 20, as given in this case, the

court's instruction, requires the plaintiff to prove that the "wet floor created an unreasonable risk of harm to plaintiff," the danger of which the defendant should expect that the plaintiff would fail to realize or to adequately protect herself from, whereas IPI Civil No. 21.02 simply requires that the plaintiff prove that the defendant did or failed to do specific things as alleged in the complaint and in that so acting or failing to act the defendant was negligent. Negligence has been held in a number of Illinois cases, where a business invitee has been injured, to consist of failure to use reasonable care to prevent injury to the invitee from the condition of the premises. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552; *Tolman v. Wieboldt Stores, Inc.* (1967), 38 Ill. 2d 519; *Mick v. Kroger Co.* (1967), 37 Ill. 2d 148.) It is the contention of the plaintiff that the court should have given its instruction No. 15, which is IPI Civil No. 21.02 and incorporates the standard of ordinary care as defined elsewhere in the instructions.

The court also submitted at the behest of the defendant the following special interrogatory to the jury:

> "Does the jury find from the preponderance of the evidence that the defendant knew, or should have known, that the wet floor created an unreasonable risk of harm to the plaintiff?"

The jury answered this, "no."

The plaintiff contends that the giving of the court's instruction No. 20 on burden of proof in lieu of the plaintiff's submitted Instruction No. 15, which followed the language of IPI Civil No. 21.02, was error, since it substituted knowledge of an unreasonable risk of harm to the plaintiff for the accepted standard in Illinois of the exercise of ordinary or reasonable care by the defendant toward the invitee. It thus confused the jury as to the plaintiff's burden of proof. The plaintiff concedes that section 343 of the Restatement (Second) of Torts in its entirety and as amplified by the Comments correctly states current Illinois law as to the duty of a land owner to a business invitee, but the plaintiff says the defendant's instruction as modified and submitted by the court gave the jury the wrong impression because it stopped short of any explanation of the phrase "unreasonable risk of harm," leaving the jury to interpret this phrase as best it could, whereas the instruction, if it was going to be based on Restatement (Second) of Torts should have included some amplification as provided by the Comments, especially as to the situation where the landowner, knowing the dangerous condition, should anticipate that the invitee, even if the condition is known to him, will not understand or appreciate the danger or take adequate steps to protect himself against it.

The plaintiff also complains about the special interrogatory which, she says, unduly emphasized the defendant's knowledge of unreasonable

harm to the plaintiff as the ultimate issue in the case, whereas the ultimate issue should have been expressed in terms of failure by the landowner to use reasonable care, considering his knowledge of the dangerous condition.

■■ While we agree that the obligation of the landowner is correctly expressed as the duty to use reasonable or ordinary care to protect the invitee from a known dangerous condition of the land, and that this is true even where the invitee may note the condition, if the landowner should anticipate that the invitee will not realize the danger even if warned or will probably not take adequate steps to guard himself from it, we feel the plaintiff puts too much emphasis on the negative effect of the phrase "unreasonable risk of harm," as given in the instruction. We note that while IPI Civil No. 21.02 was not given as set out in Illinois Jury Pattern Instructions (Civil), the court's modified instruction did incorporate beside the phrase "unreasonable risk of harm" the idea expressed in subparagraph (b) of section 343 of the Restatement (Second) of Torts, that is, that the duty of the defendant landowner extends to a situation where he should expect that the invitee may fail (a) to understand or appreciate the danger or (b) fail to take adequate steps to protect himself against it.

■■ Thus, the jury was presented by the court's instruction with the issue as to whether the bank should have realized that the plaintiff would not appreciate the danger or would probably not take steps to adequately guard against it, so that the qualifications stated in subparagraph (b) of section 343 of the Restatement (Second) of Torts were actually brought to the jury's attention. Considering that the dangerous condition in question was purely an incident of the weather, and was sudden, fortuitous and temporary, we think the modification of the standard IPI instruction which was given by the court was not unfair. While Illinois Pattern Jury Instructions are mandated by Supreme Court Rule 239 (Ill. Rev. Stat. 1977, ch. 110A, par. 239) where applicable, this rule is qualified by the phrase therein "giving due consideration to the facts and the prevailing law," and in view of the special facts of this case we think the court had leeway to modify the standard instruction. While the plaintiff contends the jury was confused by the use of the phrase "unreasonable risk of harm," this court has no way of determining this and we will not presume it. It is true that by finding the plaintiff free from contributory negligence, the jury absolved both parties of fault, but this is not necessarily inconsistent where the weather is the main factor in an accident. We feel the plaintiff's contention with regard to the instructions must be rejected.

■■ The plaintiff complains that hearsay testimony was allowed by a defense witness, Thomas Morgan, who testified that he had placed a wax known as "Al-ways" wax on the bank's vinyl floor, under a maintenance

contract to keep the bank floors waxed, which service he had performed since 1972. He testified he had used this wax not only on the bank's floors but also on the floors of about 45 other buildings over a period of some 9 years. Defense counsel asked whether during these 9 years he had ever heard of anyone or seen anyone slip on a floor to which this wax had been applied. This was objected to and the objection sustained, whereupon defense counsel amended his question and asked if any of Morgan's customers had ever complained that a person had slipped and fallen on a floor where that wax was used. Objection was again made as hearsay and it was overruled. Whether the question was relevant is debatable. The defendant contends it related to prior notice of a dangerous condition, but the question was too general to be of any particular relevancy to the facts of this lawsuit, which arose out of very particular weather conditions. However, it was not, in our opinion, hearsay, and as it was objected to on that basis, we think the objection was properly overruled.

■■ Objection was also made to the giving of an instruction as to the adverse inference to be derived from failure to produce a witness, based on IPI Civil No. 5.01. Plaintiff did not call her husband, Robert Blackwell. After both sides had rested and at the close of the instructions' conference, defendant tendered IPI Civil No. 5.01. At that point plaintiff's counsel moved to re-open the case for the purpose of calling Robert Blackwell as a witness. Defense counsel objected, saying he believed the failure to call Robert Blackwell had not been an oversight but was a question of trial strategy. The court denied the motion to re-open the case even though plaintiff's counsel offered to have the witness in court the first thing next morning, before closing arguments began. The court then gave instruction IPI Civil No. 5.01. A motion to re-open the case after both sides had rested is addressed to the sound discretion of the court. While under the circumstances of this case we think it would have been entirely proper for the trial court to have allowed the motion to re-open, the decision not to do so was certainly not an abuse of discretion. In view of the fact that the plaintiff was caught in an unfortunate position, we would have preferred to have seen either the case re-opened or the adverse instruction refused, but we do not suggest that the court's action was an abuse of discretion. In any event, it was not so significant as to be reversible error.

The judgment of the circuit court of Winnebago County is affirmed.

Judgment affirmed.

SEIDENFELD and LINDBERG, JJ., concur.