CATHERINE F. SORENSON, Plaintiff-Appellee, *v.* MICHAEL FIO RITO, Defendant-Appellant.

First District (4th Division)   No. 79-2005

Opinion filed November 6, 1980.

LINN, P. J., concurring in part and dissenting in part.

Peter Fricano, of Chicago, for appellant.

William Carlisle Herbert, of Hopkins, Sutter, Mulroy, Davis & Cromartie, of Chicago, for appellee.

Mr. JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, Catherine F. Sorenson, brought an attorney malpractice action against the defendant, Michael Fio Rito. The defendant appeals from a judgment of the circuit court of Cook County awarding the plaintiff damages in the form of penalties, interest and attorneys' fees

incurred as a result of the defendant's failure to timely file certain inheritance and estate tax forms. The defendant alleges that: (1) the judgment of the trial court was against the manifest weight of the evidence; (2) the court did not properly assess damages; (3) the court committed reversible error in its various rulings on the evidence; and (4) the court was prejudiced against the defendant.

Catherine Sorenson testified that on the night of her husband's death, she had a telephone conversation with attorney Michael Fio Rito. The conversation was arranged by Sorenson's future son-in-law, who was a good friend of Fio Rito. During this call, Sorenson asked Fio Rito if she could use checks signed by her husband before his death to withdraw cash from the bank. He advised her that she could.

Sorenson stated that a few months later, Fio Rito met with her and discussed the probating of her husband's estate. He told Sorenson that since the assets all appeared to be in joint tenancy, there would be no problem in transferring the assets into her name alone. At the end of the meeting, Fio Rito took with him several documents belonging to Sorenson, including deeds to two houses, trust documents, certificates of deposit and a list of stocks. Sorenson said that she called Fio Rito a month after this meeting, and asked him what was happening with her husband's estate. He told her that he was taking care of everything. Sorenson further testified that she received a telephone call in April of 1975 from an attorney named Alvin Seigan. Seigan told her that he was helping Fio Rito while Fio Rito was out of town. He asked her to bring certain documents to his office. When Sorenson arrived at Seigan's office, he inquired whether she had spoken with Fio Rito about fees. She told him that there had been no discussion about fees. Sorenson testified that she made out a check to Seigan with the express understanding that the money would be given to Fio Rito. During the following months, Sorenson allegedly called Fio Rito from time to time to inquire about the estate. Each time, Fio Rito told her not to worry because he was taking care of it.

Sorenson testified that she contacted Greg McHugh, a staff attorney with the Cook County Legal Assistance Foundation in February of 1977. She told him that a couple of years had passed and nothing had been done about her husband's estate. When the attorney contacted Fio Rito he was told that Fio Rito was taking care of the matter. Sorenson continued to visit Fio Rito during the next few months. She testified that on one of these occasions, Fio Rito said, "You have been too nice. You got lost in the shuffle." He also admitted that there would be some tax penalties.

In his testimony at trial, Fio Rito denied speaking to Sorenson on the night of her husband's death. He claimed that she never asked him to work on the estate tax returns. Fio Rito testified that he first met Sorenson at the home of her daughter and son-in-law. Although he looked over

certain documents relating to the estate, he denied having taken them with him. Fio Rito said that he recommended Alvin Seigan, an "office associate" to do Sorenson's tax work. Sorenson retained Seigan, but would call Fio Rito from time to time when she could not reach Seigan.

Sometime later, Fio Rito called Sorenson's son-in-law to inform him that Alvin Seigan had died. When Sorenson called to ask about her documents, Fio Rito told Mrs. Seigan to bring them to his office. He held these documents for about a year but did not do any work on them. Fio Rito testified that he advised Sorenson to look for a new "tax man" and she agreed to let an attorney by the name of David Weiner handle the matter. Fio Rito's last contact with Sorenson occurred in December of 1975 when he returned her files. He did not receive a fee from Sorenson.

In June of 1977, Sorenson retained a new attorney, Henry Lawrie, to handle her husband's estate. Lawrie completed the inheritance tax and estate tax returns and filed them on September 29, 1977. Because the returns were filed late, Sorenson was required to pay $6,409.25 in penalties and interest. Also, Sorenson incurred about $1500 in attorneys' fees which arose from unsuccessful attempts to obtain refunds of the penalty and interest charges.

At the trial, the court took judicial notice of Disciplinary Rule 6—101(A)(3) of the Code of Professional Responsibility, which states, "A lawyer shall not neglect a legal matter entrusted to him." The court also allowed Greg McHugh to testify on the standard of care applicable to attorneys practicing in the Chicago area. McHugh had been practicing in the Chicago area since he was licensed to practice law in Illinois in May of 1976. He was employed as the head of the Senior Department of the Cook County Legal Assistance Foundation. In this capacity, he filed many State inheritance tax returns and Federal estate tax returns. McHugh testified that, in his opinion, an attorney of ordinary skill and knowledge in the Chicago area would anticipate that deadlines exist for the filing of State inheritance tax returns and Federal estate tax returns in handling decedents' estates and would know how to find out what those deadlines were.

The defendant first contends that the judgment of the trial court was against the manifest weight of the evidence. He claims that there was no evidence that he and Sorenson entered into an attorney-client employment relationship or that he ever performed legal services for Sorenson.

A reviewing court has a duty to reverse the judgment of the trial court where it determines that the judgment is against the manifest weight of the evidence. (*Brongel v. Brongel* (1977), 48 Ill. App. 3d 27, 362 N.E.2d 750.) However, in making this determination, the appellate court must view the evidence introduced at trial and the inferences drawn therefrom in the aspect most favorable to the prevailing party below.

(*Fetterman v. Production Steel Co.* (1954), 4 Ill. App. 2d 403, 124 N.E.2d 637.) Therefore, a judgment by the trial court in favor of the plaintiff should be sustained if there is evidence which, together with all inferences favorable to the plaintiff, tends to prove the essential elements of the plaintiff's claim. *Fosdick v. Servis* (1963), 40 Ill. App. 2d 363, 189 N.E.2d 538.

The record shows that Sorenson gave Fio Rito the documents relating to her husband's estate with the expectation that he would perform whatever legal services were necessary. She called Fio Rito several times to check on his progress. Each time, he told her that everything was fine and that she should not worry. On one occasion, Fio Rito seemed to have acknowledged his neglect of the matter by telling Sorenson, "You have been too nice. You got lost in the shuffle."

Fio Rito claims that Sorenson retained *another* attorney, Alvin Seigan, to perform services in connection with her husband's estate. It is true that Sorenson made out a check to Seigan. However, according to Sorenson's testimony, Seigan explained to her that he was just helping Fio Rito and assured her that Fio Rito would receive the money. The trial court apparently chose to believe this testimony. It is within the province of the trial court to determine the credibility of witnesses and the weight to be given to their testimony. (*Wyman-Gordon Co. v. Lynch Area Fire Protection District* (1977), 51 Ill. App. 3d 451, 366 N.E.2d 1055.) Based upon these facts, we conclude that the judgment of the trial court was not against the manifest weight of the evidence.

The defendant next contends that the trial court erred in awarding as damages the attorneys' fees incurred by Sorenson in her attempts to obtain refunds of the penalty and interest charges. He claims that allowance of these fees violated the so-called "American rule," which prohibits a successful litigant from recovering his attorneys' fees and expenses of litigation in the absence of a statute allowing such expenses. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) Since the plaintiff could not point to a statute dealing specifically with this situation, the defendant claims that the plaintiff is not entitled to recover her legal expenses as damages.

We believe that in making this argument, the defendant confuses the exception with the general rule. The general rule in Illinois is that one who commits an illegal or wrongful act is liable for all of the ordinary and natural consequences of his act. (*Philpot v. Taylor* (1874), 75 Ill. 309; *Bimba Mfg. Co. v. Starz Cylinder Co.* (1969), 119 Ill. App. 2d 251, 256 N.E.2d 357; 15 Ill. L. & Prac. *Damages* §32 (1968).) Logically, this would include any attorneys' fees expended in bringing a lawsuit against the wrongdoer. However, because it was felt that the allowance of attorneys' fees would deter a litigant from prosecuting or defending an uncertain

claim, the "American rule" was adopted as an exception to the general rule. The Supreme Court stated the rationale for the "American Rule" as follows:

> "In support of the American rule, it has been argued that since litigation is at best uncertain one should not be penalized for merely defending or prosecuting a lawsuit, and that the poor might be unjustly discouraged from instituting actions to vindicate their rights if the penalty for losing included the fees of their opponents' counsel." *Fleischmann Distilling Corp. v. Maier Brewing Co.* (1967), 386 U.S. 714, 718, 18 L. Ed. 2d 475, 478, 87 S. Ct. 1404, 1407.

It is clear from this statement that the policy against awarding attorneys' fees was intended to apply only where a successful litigant seeks to recover his costs in maintaining the lawsuit. We do not believe it was intended to preclude a plaintiff from recovering losses directly caused by the defendant's conduct simply because those losses happen to take the form of attorneys' fees. The plaintiff here is not attempting to recover the attorneys' fees she expended in bringing this lawsuit. Rather, she seeks to recover losses incurred in trying to obtain refunds of tax penalties which were assessed against her solely as a result of the defendant's negligence. Had the plaintiff been forced to hire an accountant to repair the damage caused by the defendant's conduct, she would undoubtedly have been entitled to recover the accountant's fee as an ordinary element of damages. There is no basis in logic for denying recovery of the same type of loss merely because the plaintiff required an attorney instead of an accountant to correct the situation caused by the defendant's neglect. In holding the defendant liable for the plaintiff's losses, we are not violating the policy against "penalizing" a litigant for defending a lawsuit. We are simply following the general rule of requiring a wrongdoer to bear the consequences of his misconduct.

The distinction between legal expenses which are recoverable as ordinary damages and attorneys' fees which are not recoverable as costs of litigation was recognized by the Illinois Supreme Court in *Ritter v. Ritter* (1943), 381 Ill. 549, 56 N.E.2d 41. In denying the plaintiffs' request for attorneys' fees in prosecuting the action, the *Ritter* court stated,

> "While it is recognized that where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others, there may be a recovery in damages against the author of such act, measured by the reasonable expenses incurred in such litigation, [citations] yet the rule is equally well established that where an action based on the same wrongful act has been prosecuted by the plaintiff against the defendant to a successful issue, he can not in a subsequent action

recover, as damages, his costs and expenses in the former action." (381 Ill. 549, 554-55, 46 N.E.2d 41, 44.)

The defendant claims that this distinction is no longer viable in light of the Federal court opinion in *Garris v. Schwartz* (7th Cir. 1977), 551 F.2d 156. He cites *Garris* as support for his contention that attorneys' fees *per se* are not recoverable under Illinois law in the absence of a statute or agreement to that effect.

While Federal court decisions constitute persuasive authority, they are not binding on this court. (*City of Chicago v. Groffman* (1977), 68 Ill. 2d 112, 368 N.E.2d 891.) In *Garris*, the plaintiff sued her attorney for negligently causing a revoked will to be admitted to probate. She claimed that as a result of the attorney's negligence, she was forced to incur legal expenses in protecting her interest in the estate. The plaintiff asked the court to award her these legal expenses as an ordinary element of damages. The court determined that Illinois law would preclude recovery of attorneys' fees under the circumstances. The *Garris* court based this determination on its interpretation of certain recent appellate court decisions. We believe that those decisions are readily distinguishable from the instant appeal.

In *Reese v. Chicago Burlington & Quincy R.R. Co.* (1972), 5 Ill. App. 3d 450, 283 N.E.2d 517, *aff'd on other grounds* (1973), 55 Ill. 2d 356, 303 N.E.2d 382, a railroad employee who was injured by a defective crane sued the railroad. The railroad then sued the manufacturer of the crane for indemnity. The railroad claimed that it should be allowed to recover the attorneys' fees it incurred in defending the original action. The court refused this claim, holding that attorneys' fees are not an element of damages in an action for indemnity. This holding was followed in *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859. In *Kerns*, a retailer was held liable for injuries caused by a defective product which he sold. He sued the manufacturer for indemnity, including the attorneys' fees expended in defending the original lawsuit brought by the injured party. The court denied the request for attorneys' fees, stating that because the retailer was properly sued as a defendant strictly liable, he should bear the expenses of the litigation. A third appellate court case, *Insurance Company of North America v. J. L. Hubbard Co.* (1974), 23 Ill. App. 3d 254, 318 N.E.2d 289, was similarly decided along the same set of principles.

We believe that neither *Reese* nor *Kerns* constitute authority for denying the legal expenses claimed in this appeal. In both of those cases, the indemnity plaintiff was properly subject to suit by the injured party. The indemnity defendant did nothing to subject the plaintiff to avoidable litigation and was therefore not required to pay the resulting attorneys' fees. Here, on the other hand, the defendant's neglect was the direct

cause of the legal expenses incurred by the plaintiff. Had the defendant properly filed the necessary tax returns, there would have been no need for the plaintiff to engage in efforts to recover penalty and interest charges.

Another case cited by the *Garris* court as support for its holding is *Kniznik v. Quick* (1970), 130 Ill. App. 2d 273, 264 N.E.2d 707. The plaintiff in *Kniznik* claimed attorneys' fees from divorce and child custody proceedings as damages in an alienation of affection lawsuit. The court denied the attorneys' fees, basing its decision on a strong public policy to limit damages in such lawsuits. Since no similar public policy is involved in the present appeal, we do not believe that *Kniznik* is applicable.

■■ In conclusion, we do not agree with the interpretation of Illinois law set forth in *Garris v. Schwartz* (7th Cir. 1977), 551 F.2d 156. In our view, Illinois law does not preclude us from awarding attorneys' fees when those fees constitute nothing more than ordinary losses resulting from the defendant's conduct. (See dissenting opinion in *Garris v. Schwartz* (Pell, J.).) Therefore, the trial court acted properly in awarding the legal expenses claimed by the plaintiff.

■■ The defendant next contends that the trial court erred in allowing the plaintiff to testify about her relationship with the defendant because the relationship was immaterial to the issues of the case. Evidence is material where it has a legitimate bearing on disputed matters. (*Joynt v. Barnes* (1979), 71 Ill. App. 3d 187, 388 N.E.2d 1298.) We believe that the relationship between Sorenson and Fio Rito was of central importance. Sorenson's claim was based on her assertion that Fio Rito was her attorney. Fio Rito denied this assertion. Therefore, evidence concerning their relationship was properly allowed.

■■ The defendant argues that the trial court erred in permitting Greg McHugh to testify concerning the standard of care applicable to Chicago attorneys because McHugh was not qualified as an expert witness. In *House v. Maddox* (1977), 46 Ill. App. 3d 68, 360 N.E.2d 580, this court held that while expert testimony is normally required with respect to the standard of care owed by a lawyer to his client, such testimony is not always necessary. The court stated that "where the record discloses obvious and explicit carelessness in defendant's failure to meet the duty of care owed by him to plaintiff, the court will not require expert testimony to define further that which is already abundantly clear." (46 Ill. App. 3d 68, 73, 360 N.E.2d 580, 584.) The record shows that the defendant here failed to take any action whatsoever in regard to the matters entrusted to him by the plaintiff. We find that such negligence is so explicit that expert testimony concerning the standard of care was unnecessary.

The defendant next contends that the trial court erred in not allowing the defendant to impeach the testimony of the plaintiff's daughter as to the date of a certain conference between the plaintiff and the defendant. While a witness may be questioned to a limited extent on collateral matters, the scope and extent of cross-examination rests primarily in the discretion of the trial court. (*Sweeney v. Max A. R. Matthews & Co.* (1970), 46 Ill. 2d 64, 264 N.E.2d 170.) We find nothing in the record which suggests that the trial court abused its discretion in limiting the scope of cross-examination.

■■ The defendant also contends that the trial court erred in allowing the plaintiff to introduce into evidence certain exhibits after the plaintiff had rested. Generally, it is within the discretion of the trial judge whether to allow a party to introduce evidence after he has rested its case. (*Blackwell v. City National Bank & Trust Co.* (1980), 80 Ill. App. 3d 188, 399 N.E.2d 326.) Here, the plaintiff's counsel announced on the first day of trial that he would wait until the end of the plaintiff's case to introduce the plaintiff's exhibits. Through an oversight, the plaintiff's exhibits were not introduced until the close of the whole case. We find that the defendant was neither surprised nor prejudiced by the trial court's decision to allow the plaintiff to correct this oversight.

The defendant argues that the damages assessed were improper in that approximately one-half of the estate assets in question were acquired by the plaintiff's own contributions from her employment. The defendant claims that this fact may have substantially reduced or completely eliminated any tax liability had the plaintiff filed with the Internal Revenue Service an affidavit of contribution. Under 26 U.S.C. §2040 (1978 Supp.), the full value of joint tenancy property is subject to the Federal estate tax except to the extent that a surviving joint tenant can show that a portion of the property originally belonged to the survivor. The record indicates that the plaintiff and her attorney discussed the possibility of tracing some of the joint tenancy property to her own contributions. The plaintiff's attorney concluded that since the plaintiff had no records of what property was originally hers, she could not meet the burden of proof necessary to reduce the value of the estate subject to tax. The defendant failed to establish that this conclusion was unreasonable. We therefore conclude that the damages assessed were proper.

■■ The defendant next contends that the plaintiff alone should bear the liability for the penalty and interest charges because she failed to take steps to mitigate her losses. It is a well-established rule that a matter raised for the first time on appeal will not be considered. (*Bridges v. Neighbors* (1975), 32 Ill. App. 3d 704, 336 N.E.2d 233.) Since the defendant failed to present this argument in the trial court, he cannot raise it in this appeal.

The defendant last contends that the trial court was prejudiced against the defendant and that the trial judge erroneously based his decision on his own personal experiences rather than on the legal standards of the defendant's community. Although the defendant asserts that the record clearly reveals the alleged error, he fails to specify any portion of the record which supports this assertion. We are not persuaded that the trial court acted improperly toward the defendant or that it based its decision on an erroneous standard of care.

The dissent states that the plaintiff failed to prove that the attorneys' fees awarded as damages were reasonably incurred in her unsuccessful efforts to mitigate damages. This issue is not raised by the defendant in its brief. The dissent states that because the attempts were unsuccessful, it was incumbent upon the plaintiff to show that there was a reasonable possibility of success. This statement is made without citation of authority. We believe the record clearly contains evidence as to the reasonableness of the efforts of the plaintiff. Mr. Lawrie, the plaintiff's attorney, testified in direct response to a question, that he believed there was a hope of success in obtaining a refund. There was no cross-examination on this point. It is the province of the trier of fact to determine whether the plaintiff's efforts were reasonable. The finding of the trial court should not be overturned unless it is clearly erroneous. (*Larson v. Boudart* (1968), 104 Ill. App. 2d 227, 244 N.E.2d 364.) There is no indication that it is clearly erroneous in this case.

The dissent also states that the plaintiff failed to prove that $1500 was a reasonable amount. This issue also was not raised in the defendant's brief. The dissent reasons that in order to recover attorneys' fees the plaintiff must produce records detailing the services rendered and the amounts charged for these services. It cites *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947, for that proposition. *Jacobson* is a divorce proceeding in which the court was required to set fees. Since there was no need for the court to set fees here, we believe that *Jacobson* is inapplicable. In determining whether the plaintiff proved the reasonableness of her expenditures, ordinary principles of damages should apply. It has been held that a paid bill is presumptive evidence of the reasonableness of the amount paid. (*Saunders v. Wilson* (1969), 114 Ill. App. 2d 380, 253 N.E.2d 89; *Williams v. Matlin* (1946), 328 Ill. App. 645, 66 N.E.2d 719.) Moreover, it is the uncontroverted testimony of the witnesses at trial and not the bill itself which provides the proof. (*Saunders*, 114 Ill. App. 2d 380, 382, 253 N.E.2d 89, 90.) Here, the plaintiff's attorney testified that the cost of the services he performed in connection with the refund claims amounted to $1500. The plaintiff testified that she paid those fees. There was no cross-examination as to

the reasonableness of the $1500 figure. For these reasons, we believe the plaintiff met her burden in proving the damages she incurred as a result of the defendant's conduct.

For the foregoing reasons, the judgment of the circuit court is affirmed.  .

Affirmed.

JOHNSON, J., concurs.

Mr. PRESIDING JUSTICE LINN, concurring in part and dissenting in part:

I agree with the majority's holding that the trial court properly found defendant liable to plaintiff for the penalties and interest plaintiff paid as a result of the late filing of the estate's tax returns. However, I disagree with the holding of the majority affirming that portion of the judgment of the trial court which found defendant liable for the $1,500 in attorneys' fees. Whether I would agree with the proposition of law that these kinds of attorneys' fees should be recoverable in a case such as the present one is, I believe, irrelevant. This court should not overrule a prior decision, even a Federal decision interpreting Illinois law, unless it is necessary to do so. I think it was unnecessary in this case, for even assuming these kinds of attorneys' fees are recoverable, I believe plaintiff failed to meet her burden in proving that she suffered these $1,500 as damages.

The plaintiff had the burden of proving the damages she had suffered. In the present case, plaintiff allegedly suffered these $1,500 in attorneys' fees as damages. These damages were supposedly incurred in her efforts to recover the penalties and interest, the actual damages suffered by plaintiff. Thus, plaintiff allegedly spent the $1,500 in her efforts to mitigate damages in this case. Expenses reasonably incurred by a plaintiff in an effort to mitigate damages may be recovered as damages regardless of whether the effort is successful or unsuccessful. (*Kane v. City of Chicago* (1946), 392 Ill. 172, 64 N.E.2d 506; *Peck v. Chicago Rys. Co.* (1915), 270 Ill. 34, 110 N.E. 414; *Illinois Structural Steel Corp. v. Pathman Construction Co.* (1974), 23 Ill. App. 3d 1, 318 N.E.2d 232.) However, a plaintiff must prove three particulars to recover these expenses. First, plaintiff must prove the amount of the expenses. Second, plaintiff must prove the expenses were reasonably incurred. Third, plaintiff must prove the amount of these expenses was reasonable.

The only evidence in the record to justify the claim for $1,500 paid by plaintiff to her attorney is plaintiff's testimony that she paid this amount and the following testimony of the attorney. The attorney said the $1,500 was paid to him as fees for his efforts to recover the penalties

and interest. As justification for these fees, he said he had filed claims with the respective tax authorities and had contacted these authorities several times. No other evidence was admitted to prove these $1,500 in claimed damages. Because of this, I must assert that plaintiff completely failed to prove that she suffered these $1,500 in fees as recoverage damages.

Plaintiff failed to prove that the attorneys' fees were reasonably incurred as expenses in her unsuccessful effort to mitigate damages. No evidence was presented to show that there was any possibility that the attempt to recover the penalties and interest could have succeeded. Since the attempt to recover the penalties and interest was unsuccessful, I believe that plaintiff had to present some evidence to indicate that it was reasonable to even make an attempt to recover the penalties and interest. This would have required her to present some evidence from which it could be concluded that a reasonable possibility of success existed.

Also, plaintiff has failed to prove that the $1,500 paid by her as fees was a reasonable amount. In cases in which attorneys' fees have been allowed to be recovered in this State, it has been required that some evidence, usually attorney's records detailing the services rendered, including time records, and the amounts charged for these services, be in the record to show the reasonableness of the fees claimed and awarded. (See *In re Marriage of Jacobson* (1980), 89 Ill. App. 3d 273, 411 N.E.2d 947.) In the present case, the only evidence in the record to show the reasonableness of the $1,500 in fees is the attorney's testimony that he filed some claims and contacted the necessary authorities several times. This evidence is entirely insufficient to prove the reasonableness of the fees.

Accordingly, I concur in the majority's holding that plaintiff is liable for the penalties and interest, but I dissent in upholding the award of attorneys' fees. Since plaintiff failed to prove that she had suffered the $1,500 as damages, I believe it was unnecessary to take the bold step of overruling a prior decision in this case.